# EXHIBIT A

**TO PLAINTIFF'S ATTORNEY:  PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER**

### COMMONWEALTH OF MASSACHUSETTS

.............. MIDDLESEX .............. , ss

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 10 - 1920

Benedictos Zolewski ......... , Plaintiff(s)

HSBC Bank USA NA as trustee of the Deutsche
Alt-A Mortgage Loan Trust, Series 2007-OA3
Mortgage Pass-Through Certificates,
Mortgage Electronic Registration Defendant(s)
Systems, Inc. and Bank of America
Home Loan Servicing, LP

### SUMMONS

Mortgage Electronic Registration Systems, Inc.

To the above-named Defendant: Registered Agent: CT Corporation Systems, 155 Federal Street
Suite 700, Boston
MA
02111

You are hereby summoned and required to serve upon the Law Office of George D. .........

Pianelles, PC ..................... plaintiff's attorney, whose address is 873 Waverly St.

Framingham, MA 01702 ........................, an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at Middlesex Co. ......
200 Trade Center 2nd floor
Superior Court, Woburn, MA 01801 ....... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Woburn, MA

the 24th ..................................... day of May ...............................................

....................., in the year of our Lord 2010 ...........................

A true copy Attest John Cotter
3/27/2010
Deputy Sheriff Suffolk County

Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on ............................................................................................

20........, I served a copy of the within summons, together with a copy of the complaint in this action,

upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

.........................................................................................................................................

.........................................................................................................................................

.........................................................................................................................................

...........................................................................................

Dated: ............................................................................................, 20..........

**N.B.  TO PROCESS SERVER:**

**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX
ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( _____ )

( ............................................, 20.......... )

( _____ )

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX ........ ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 10 - 1920

Benaito S. Zaleuski ........ Plff.

HSBC Bank USA, NA as Trustee of the
Deutsche ALT-A Mortgage Loan Trust, Series 2007-OA3
Mortgage Pass-Through Certificate
Mortgage Electronic Registration System Inc.
Bank of America Home Loan Servicing, LP ........ Deft.

SUMMONS
(Mass. R. Civ. P. 4)

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS                                    SUPERIOR COURT DEPARTMENT

|  |  |
|---|---|
| Benedito J. Zalewski | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| v. | ) |
| | ) |
| HSBC Bank USA, N.A. as Trustee of the | ) |
| Deutsche ALT-A Mortgage Loan Trust, Series | ) |
| 2007-OA3 Mortgage Pass-Through Certificates; | ) |
| Mortgage Electronic Registration Systems, Inc.; | ) |
| and Bank of America Home Loan Servicing, LP | ) |
| | ) |
| *Defendants* | ) |
| | ) |

Case No.

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX
MAY 2 0 2010

CLERK

10-1920

COPY

## VERIFIED COMPLAINT

Plaintiff Benedito J. Zalewski ("Plaintiff") hereby brings this Verified Complaint

against HSBC Bank USA, N.A. as Trustee of the Deutsche ALT-A Mortgage Loan Trust,

Series 2007-OA3 Mortgage Pass-Through Certificates ("HSBC" and/or collectively

"Defendants"), Mortgage Electronic Registration Systems, Inc. ("MERS" and/or

collectively "Defendants"), and Bank of America Home Loan Servicing, LP ("BAC"

and/or collectively "Defendants") and the Plaintiff does hereby state and allege as follows:

## INTRODUCTION

Plaintiff brings this action against Defendants for their unfair and deceptive

lending practices in violation of M.G.L. c. 183C, 93A and 940 CMR 8.00 *et seq.*

Plaintiff also brings this action against Defendants for their wrongful attempt to foreclose

on the property located at 255 Pond Street, Ashland, Massachusetts (the "Property").

Plaintiff requests that this Court make a binding judicial determination that Defendants

lack the standing to foreclose on the Property. Plaintiff does hereby state and allege as follows:

## PARTIES

1.      Plaintiff Benedito J. Zalewski ("Plaintiff") is the record owner of 255 Pond Street, Ashland, Massachusetts (the "Property").

2.      Defendant HSBC Bank USA, N.A. as Trustee of the Deutsche ALT-A Mortgage Loan Trust, Series 2007-OA3 Mortgage Pass-Through Certificates ("HSBC" and/or collectively "Defendants") has its principal location at 1105 North Market Street, Wilmington, Delaware, and its registered agent is C T Corporation System, 155 Federal Street, Suite 700, Boston, MA 02110.

3.      Defendant Mortgage Electronic Registration Systems, Inc. ("MERS" and/or collectively "Defendants") has its principal location listed in the records of the Secretary of the Commonwealth as 1595 Spring Hill Road, Suite 310, Vienna, Virginia 22182, and its registered agent is C T Corporation System, 155 Federal Street, Suite 700, Boston, MA 02110.

4.      Defendant BAC Home Loan Servicing, LP ("BAC" and/or collectively "Defendants"), has its principal office listed in the records of the Secretary of the Commonwealth as 6400 Legacy Drive, Plano, Texas 75024 and its registered agent is C T Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the Defendants, pursuant to the Massachusetts Long Arm statute and the United States Constitution, as they have

2

purposefully availed themselves of the jurisdiction of this Court by entering into a loan transaction with Plaintiff.

5.      Venue is proper because Plaintiff resides in and the relevant transactions occurred in Middlesex County.

FACTS

6.      On or about April 30, 2004, Plaintiff purchased 255 Pond Street in Ashland, Massachusetts (the "Property") and became the record holder of the Property by deed recorded at the Middlesex County Registry of Deeds.  A true and accurate copy of the Plaintiff's Deed is attached hereto as Exhibit A.

7.      Plaintiff is a Brazilian immigrant with extremely limited knowledge of the English language.

8.      Plaintiff obtained financing to purchase the Property.

9.      On or about May 31, 2007, Plaintiff refinanced the Property through Seagate Finance.

10.     Approximately two (2) months prior to the date of closing, Rodrigo Nadal from Seagate Finance asked Plaintiff for his financial information, including federal taxes, returns, and recent paystubs, which he provided.

11.     At a meeting at Seagate Finance one or two days prior to the closing, Rodrigo Nadal told Plaintiff he could refinance the Property after one year.

12.     Plaintiff obtained a first mortgage loan ("First Mortgage") and a second mortgage loan ("Second Mortgage") with MERS as nominee for Countrywide Bank, FSB ("Countrywide").

13.     MERS is the mortgagee and nominee for both mortgages.

14.     The First Mortgage was in the amount of three hundred and forty eight thousand dollars ($348,000).  A true and accurate copy of the First Mortgage is attached hereto as <u>Exhibit B,</u> and a true and accurate copy of the First Mortgage Note is attached hereto as <u>Exhibit C</u>.

15.     The First Mortgage was a "pay-option" adjustable rate mortgage, which indicated that it has payment term options.

16.     The minimum payment does not cover the interest due on the First Mortgage resulting in the negative amortization of Plaintiff's First Mortgage balance.

17.     Plaintiff was not told that if he only paid the payment amount listed in bold on his bill, which was the minimum payment amount, he would never pay off his First Mortgage.

18.     Plaintiff was told that if he could not pay more than the minimum, he could continue to pay only the minimum until he refinanced.

19.     Plaintiff was not told that the principal balance of his First Mortgage could increase.

20.     Once the principal balance grows to a certain amount, the First Mortgage will reset at a far higher payment than the introductory payment rate.

21.     The First Mortgage contains a prepayment penalty.

22.     The First Mortgage had an initial interest rate of eight (8) percent for the first five (5) years.

23.     After the initial five (5) years, the interest rate is determined by adding two point two five (2.25) percent to the current one year LIBOR index.

24.     The interest rate can climb as high as thirteen (13) percent.

4

25.     The minimum monthly payment on the First Mortgage prior to the first adjustment was one thousand four hundred and sixty seven dollars and eighteen cents ($1,467.18).

26.     The Second Mortgage was in the amount of forty three thousand dollars ($43,000).   A true and accurate copy of the Second Mortgage is attached hereto as Exhibit D.

27.     The Second Mortgage has an interest rate of eleven point three seven five (11.375) percent.

28.     The monthly payments due on the Second Mortgage were four hundred and twenty six dollars and sixty three cents ($426.63).

29.     The total minimum monthly payment for the two mortgage loans was one thousand eight hundred and ninety three dollars and eighty one cents ($1,893.81).

30.     According to the Plaintiff's 2006 federal tax returns, his income for 2006 was thirty four thousand seven hundred and forty eight dollars ($34,748), which gave them a monthly take home income of two thousand eight hundred and ninety five dollars ($2,895).  See Exhibit E.

31.     The monthly payments on the two loans totaled sixty five (65) percent of Plaintiff's monthly take home pay.

32.     Plaintiff was told that he would be able to refinance out of the two loans and into a fixed-rate mortgage.

33.     Because Countrywide and MERS financed the entire value of the Property, Plaintiff could not build equity in the Property unless he paid more than the minimum due and therefore could not refinance.

33.     Because Countrywide and MERS financed the entire value of the Property, Plaintiff could not build equity in the Property unless he paid more than the minimum due and therefore could not refinance.

34.     In addition, because the monthly mortgage payments totaled approximately sixty five (65) percent of Plaintiff's monthly take home pay, Plaintiff had to allot the remainder towards monthly household obligations, and could not put those monies towards principal.

35.     After approximately one year, the minimum payment due increased.

36.     Around that time, Plaintiff stopped paying the mortgage and attempted to modify the loan with the Countrywide, but the lender did not offer him a reasonable loan modification.

37.     For the next two (2) years, Plaintiff, with Seagate Finance's assistance, attempted to obtain a loan modification from Countrywide.

38.     Plaintiff was unable to afford the mortgages at inception.

39.     On January 27, 2010, MERS purported to assign the First Mortgage to HSBC Bank USA, N.A., as Trustee of the Deutsche ALT-A Mortgage Loan Trust, Series 2007-OA3 Mortgage Pass-Through Certificates ("HSBC") c/o BAC Home Loan Servicing, LP f/k/a Countrywide Home Loans Servicing, LP ("BAC").   A true and accurate copy of the purported assignment is attached hereto as Exhibit F.

40.     HSBC has petitioned the Court for an Order of Notice, which was granted on March 29, 2010.

41.     On April 16, 2010, counsel for Plaintiff served a Massachusetts General Laws Chapter 93A letter upon all Defendants.

42.     The Order of Notice and Assignment were both recorded on April 26, 2010.

## COUNT I
### VIOLATION OF M.G.L. c. 93A
(All Defendants)

43.     Plaintiff realleges and incorporates herein all preceding allegations of this Verified Complaint.

44.     Plaintiff has complied with all the prerequisites for bringing a claim under M.G.L. c. 93A.

45.     By making and selling loans as described above, Defendants engaged in unfair and deceptive acts or practices, in violation of M.G.L. c. 93A § 2(a), and regulations promulgated thereunder pursuant to M.G.L. c. 93A, §2(c).

46.     Defendants' unfair and deceptive conduct includes, but is not limited to the following, independently and collectively:

a.  Making exceptionally risky loans that are unfair and unconscionable to Plaintiff;

b.  Representing to Plaintiff that he would be able to refinance and keep his interest rate low without regard for Plaintiff's ability to refinance;

c.  Failing to act in good faith and conduct due diligence when attempting to foreclose on Plaintiff's Property;

d.  Arranging one hundred (100) percent financing of the value of the Property and telling Plaintiff that he would be able to refinance promptly when Plaintiff was building no equity in the Property;

    e. Failing to qualify Plaintiff to pay any monthly mortgage amounts over the minimum amount due; and

    f. Failing to qualify Plaintiff to pay the minimum monthly mortgage amount due.

47.    Defendants violated 940 CMR 8.06(1) by engaging in unfair and deceptive conduct which includes, but is not limited to, the following acts and practices:

    a. Misleading the Plaintiff regarding his ability to refinance the mortgages;

    b. Failing to disclose that paying only the minimum payment listed will build no equity in the Property

    c. Failing to disclose that paying only the minimum payment listed would cause the principal to increase

    d. Misinforming Plaintiff that the First and Second Mortgages were affordable; and

    e. Forcing Plaintiff into the position wherein he has no equity in the Property and no ability to build equity in the Property.

48.    Defendants violated G. L. c. 183C and 940 CMR 8.06(15) by engaging in unfair and deceptive conduct which includes, but is not limited to, the following acts and practices:

    a. Making excessively risky loans that are unfair and/or unconscionable to Plaintiff;

    b. Failing to account for Plaintiff's ability to repay the First Mortgage;

c.  Failing to account for Plaintiffs' ability to repay the Second Mortgage; and

d.  Making a home mortgage loan secured by Plaintiff's principal residence in circumstances where the Defendants did not reasonably believe Plaintiff would be able to make the scheduled payments.

49.  Defendants knew or should have known that the ultimate harm of foreclosure and loan defaults, including the devastating impact on a borrower's credit, would result to Plaintiff.

WHEREFORE, Plaintiff hereby requests that the First and Second Mortgage be declared void and unenforceable.  Plaintiff requests that this Court award him relief of multiple damages, costs and attorneys fees.  Additionally, Plaintiff further requests injunctive relief staying any foreclosure sale on the Property so that this case may adequately be heard prior to an unjust foreclosure.

COUNT II
DECLARATORY JUDGMENT
(Against HSBC and MERS)

50.  Plaintiff re-alleges and incorporates herein all preceding allegations of this Verified Complaint.

51.  Countrywide was the originating entity for the First and Second Mortgages.

52.  MERS is nominee trustee for both the First and Second Mortgages.

53.  MERS' powers to act on behalf of Countrywide with respect to the First Mortgage are limited to those explicitly granted in the clear and unambiguous language contained in the First Mortgage.

54.     The First Mortgage fails to explicitly grant MERS the power to assign the First Mortgage.

55.     HSBC has a legal duty to act in good faith and to use reasonable diligence to protect the interests of the mortgagor.

56.     HSBC cannot establish a clear ownership interest because it did not receive the First Mortgage through a valid assignment prior to filing a complaint in the Land Court.

57.     Despite its inability to exercise the Power of Sale under the First Mortgage, HSBC is attempting to foreclose on the property.

58.     HSBC filed a Land Court Complaint against Plaintiff seeking to foreclose upon the Property.

59.     The Land Court Complaint is defective due to MERS' inability to assign the First Mortgage.

60.     An actual case and controversy has arisen as to who holds legal title to the Property.

61.     Plaintiff seeks a determination of the correct owner of the First Mortgage and propriety of the Land Court Complaint as the Plaintiff's rights will be effected by such a determination.

62.     A judicial decree by this Court will resolve this controversy.

WHEREFORE, Plaintiff respectfully requests that this Court grant a determination of the current owner of the Property and that the Land Court Complaint be deemed defective.

## PRAYERS FOR RELIEF

63.     Based upon the foregoing reasons, Plaintiff respectfully requests the following relief:

    i.   That the Land Court Complaint be declared void;

    ii.   That the First Mortgage and Second Mortgage be declared unenforceable and void.  Or, in the alternative, that the Court reform the First Mortgage and Second Mortgage so they have a principal, payment and term that Plaintiff could reasonably expect to repay;

    iii.   Money damages from Defendants for all actual monetary damages including, but not limited to, interest on the mortgages, costs, attorneys' fees and such further relief as is just and equitable;

    iv.   That this Court grants a determination of the current owner of the Property.

    v.   Injunctive relief staying any foreclosure sale on the Property so that this case may adequately be heard prior to an unjust foreclosure; and

    vi.   For such other relief this Court deems fair and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all counts so triable.

*[Signature Page Follows]*

Respectfully submitted,

BENEDITO J. ZALEWSKI
By his attorneys,

George N. Piandes, BBO No. 640802
George@gnplawfirm.com
Kristin A. Pappas, BBO No. 677009
Kristin@gnplawfirm.com
The Law Office of George N. Piandes, P.C.
873 Waverly Street
Framingham, MA 01702
(508) 872-8000

Dated: May 18, 2010

12

<u>Verification</u>

I, Benedito J. Zalewski, have read the foregoing Verified Complaint and do have personal knowledge of all of the facts stated in the foregoing Verified Complaint and hereby swear under the pains and penalties of perjury that all of those facts are true and accurate.

_____
Benedito J. Zalewski

Dated: May 18, 2010

# EXHIBIT A

MASSACHUSETTS EXCISE 1
Southern Middlesex District RU₀ # 001
Date: 03/31/2004 03:18 PM
Ctrl# 028570 20334 Doc# 00074856
Fee: $1,504.80 Cons: $330,000.00



Bk: 42368 Pg: 288    Doc: DEED
Page: 1 of 2    03/31/2004 03:18 PM

### QUITCLAIM DEED

We, Edward C. Borelli and Martha L. Borelli of Ashland, Middlesex County, Massachusetts

For consideration of Three Hundred Thirty Thousand ($330,000.00) Dollars

Grant to Benedito J. Zalewski of 255 Pond Street, Ashland, Middlesex County, Massachusetts

*With Quitclaim Covenants*

A certain parcel of land situated on the westerly side of Pond Street in Ashland, Middlesex County, Massachusetts, containing 30,919 square feet, more or less, as shown on the plan entitled, "Plan of Land in Ashland, Mass., Property of Henry Borelli", dated October 24, 1977, by William F. Drake & Associates, which plan is recorded with Middlesex South Registry of Deeds at Book 13400, Page 70, and according to which, said parcel is bounded and described as follows:

SOUTHEASTERLY   by the westerly line of Pond Street on said plan, eighty-nine and 08/100 (89.08) feet;

SOUTHWESTERLY   by land of Peter W. & Maureen R. Gavin, as shown on said plan, two hundred thirty-four and 04/100 (234.04) feet;

NORTHWESTERLY   by land of Richard B. Shepardson, as shown on said plan, one hundred seventy-five (175) feet; and

NORTHEASTERLY   by a parcel containing 38,295 square feet, more or less, as shown on said plan, two hundred forty-eight and 70/100 (248.70) feet.

For title reference see deed dated March 3, 1978 and recorded in the Middlesex South District Registry of Deeds in Book 13400, Page 070.

Witness our hands and seals this _30th_ day of March, 2004.

Edward C. Borelli                    Martha L. Borelli

Tobin and Tobin, P.C.
735 South Street
Roslindale, MA 02131-1705

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss:

On this _30th_ day of March, 2004, before me, the undersigned notary public, personally appeared Edward C. Borelli and Martha L. Borelli, proved to me through satisfactory evidence of identification, being driver's license, to be the persons whose names are signed above, and acknowledged the foregoing to be signed by them voluntarily for its stated purpose.

_____

*Notary Public: Thomas G. Waldstein*
*My Commission Expires: July 30, 2010*
*Qualified in the Commonwealth of Massachusetts*

*TGW real estate file Borelli deed for 255 Pond St. Ashland, MA*



# EXHIBIT B



After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
JOANNE WARD

2007  00182548

Bk: 49560 Pg: 82   Doc: MTG
Page: 1 of 18   08/05/2007 11:22 AM

─────────── [Space Above This Line For Recording Data] ───────────

00016874870905007
[Doc ID #]

# MORTGAGE

MIN 1001337-0002163952-4

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  MAY 31, 2007          , together with all Riders to this document.
(B) "Borrower" is
BENEDITO J ZALEWSKI

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
Countrywide Bank, FSB.
Lender is a FED SVGS BANK
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
(E) "Note" means the promissory note signed by Borrower and dated  MAY 31, 2007          . The Note states that Borrower owes Lender
THREE HUNDRED FORTY EIGHT THOUSAND and 00/100

Dollars (U.S. $ 348,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JUNE 01, 2037         .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

MASSACHUSETTS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 11

VMP ®  -6A(MA) (0401)  CHL (08/05)(d)        VMP Mortgage Solutions, Inc. (800)521-7291              Form 3022  1/01







DOC ID #: 0001687487Ø905007

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY                    of              MIDDLESEX                    :
[Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.


Parcel ID Number:                                   which currently has the address of
                      255 POND STREET, ASHLAND
                              [Street/City]
Massachusetts 01721-2017 ("Property Address"):
            [Zip Code]

-6A(MA) (0401)      CHL (08/05)          Page 2 of 11                        Form 3022  1/01

DOC ID #: 0001687487090 5007

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.

DOC ID #: 0001687487090507

Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

DOC ID #: 0001674870905007

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

DOC ID #: 0001687487090507

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

DOC ID #: 0001687487O905007

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this

DOC ID #: 0001687470905007

Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

DOC ID #: 0001687487090S007

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC ID #: 0001687487090500 7

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
BENEDITO J. ZALEWSKI                                                              -Borrower

_____ (Seal)
                                                                                -Borrower

_____ (Seal)
                                                                                -Borrower

_____ (Seal)
                                                                                -Borrower

DOC ID #: 00016874870905007

**COMMONWEALTH OF MASSACHUSETTS,**         *Worcester*    County ss:

On this ___31___ day of _MAY, 2007_ _____ , before me, the undersigned notary public, personally appeared _____

_Benedito J. Zalewski_

_____

_____

proved to me through satisfactory evidence of identification, which was/were ___MA D.L.___ ,
to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires: _11/01/07_
(Seal)

_Gina M Braza_
Notary Public

# PAYMENT ADVANTAGE
## FIXED/ADJUSTABLE RATE RIDER
### (LIBOR-One Year Index - Rate Caps)

0001687487090507
[Doc ID #]

THIS FIXED/ADJUSTABLE RATE RIDER is made this THIRTY-FIRST day of
MAY, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower")
to secure Borrower's Payment Advantage Fixed/Adjustable Rate Note (the "Note") to

Countrywide Bank, FSB.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

255 POND STREET
ASHLAND, MA 01721-2017
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE FIXED INTEREST RATE TO AN
ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE ADJUSTABLE INTEREST
RATE CAN CHANGE AT ANY ONE TIME. FOR A LIMITED TIME THERE WILL BE A PAYMENT
OPTION THAT IS LESS THAN THE FULL AMOUNT OF INTEREST DUE. IF THIS PAYMENT
OPTION IS CHOSEN, THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE
AMOUNT ORIGINALLY BORROWED.**

**THE NOTE CONTAINS A PREPAYMENT PENALTY.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

## A.   INTEREST AND PAYMENTS
The Note provides for changes in the interest rate and the monthly payments, as follows:

• Payment Advantage Fixed/Adjustable Rate One Year LIBOR Rider
1E680-XX (12/06)(d/i)                              Page 1 of 6





DOC ID #: 0001687487090590 5007

2.   **INTEREST**
   **(A)  Fixed Interest Rate**
   Interest will be charged on unpaid Principal until the full amount has been paid. Interest will initially accrue at a yearly rate of       8.000 %. This is my initial fixed interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

   **(B)  Adjustable Interest Rate**
   The initial fixed interest rate I owe will change to an adjustable interest rate on the first       day of JUNE, 2012       and the adjustable interest rate will change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

   **(C)  Index**
   Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

   **(D)  Calculation of Adjustable Interest Rate Changes**
   Before each Interest Rate Change Date, the Note Holder will calculate my new adjustable interest rate by adding       2.250 % (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new adjustable interest rate until the next Interest Rate Change Date. My adjustable interest rate will never be greater than       13.000 % or lower than the Margin.

   **(E)  Limits on Interest Rate Changes**
   The interest rate in effect at the first Interest Rate Change Date will not be greater than       13.000 % or less than       2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 2 percentage points from the rate of interest in effect for the preceding 12 months.

3.   **PAYMENTS**
   **(A)  Time and Place of Payments**
   I will make a payment every month.

• Payment Advantage Fixed/Adjustable Rate One Year LIBOR Rider
1E680-XX (12/06)                    Page 2 of 6

DOC ID #: 00016874870905007

I will make my monthly payments on the **FIRST** day of each month beginning on **JULY 01, 2007** . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If I still owe amounts under this Note on **JUNE 01, 2037** , I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 660694, Dallas, TX 75266-0694** or at a different place if required by the Note Holder.

**(B) Minimum Payment**
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. The Minimum Payment is calculated three (3) different ways during the loan term:

    (i) Until **JUNE 01, 2017** ("Recast Date") or until the Maximum Negative Amortization Cap is reached, whichever is earlier, the Minimum Payment will be calculated using the then-current interest rate (either fixed or adjustable as described in Section 2) minus **5.000** percentage points. The result of this calculation is called the "Minimum Payment Rate." The Minimum Payment Rate can never be lower than 1%. Since the Minimum Payment Rate is less than the interest rate applied to my unpaid Principal balance, the Minimum Payment will be insufficient to pay the interest portion of the monthly payment and no portion is applied to Principal. **When I make a Minimum Payment, which is based on the Minimum Payment Rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."**

    (ii) If the unpaid Principal balance reaches the Maximum Negative Amortization Cap prior to the Recast Date, my new Minimum Payment will be the amount that would pay only the interest portion of the monthly payment based upon the then-current interest rate, which changes in accordance with Section 2. This is the Minimum Payment in effect until the Recast Date.

    (iii) After the Recast Date and for the remainder of the loan term, the Minimum Payment will be the monthly payment amount necessary to pay the loan off, in full, at the Maturity Date in substantially equal payments based on the then-current interest rate, which changes in accordance with Section 2.

**(C) Initial Monthly Minimum Payment**
Each of my initial monthly Minimum Payments until the first Interest Rate Change Date will be in the amount of U.S. $ **1,467.18** .

**(D) Monthly Payment Changes**
Changes in my monthly payment will be the result of changes in the unpaid Principal balance of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 2 and 3 of this Note.

DOC ID #: 0001687487090905007

**(E)   Additions to My Unpaid Principal**

For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

**(F)   Payment Options**

Until the Recast Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") if they are greater than the Minimum Payment. The Payment Options are calculated using the interest rate in accordance with Section 2. The following Payment Options may be provided:

(i)   **Interest Only Payment:** the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)   **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii)   **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are greater than the Minimum Payment. If the Maximum Negative Amortization Cap is reached, then the Payment Options available will be the Amortized Payment and the 15 Year Amortized Payment. Upon the Recast Date I will no longer have Payment Options and I will be required to pay the Amortized Payment, which becomes the Minimum Payment as described in Section 3(B)(iii).

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

(A)   Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by

Bk: 49560 Pg: 97

DOC ID #: 0001687487090507

this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    (B)   When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Paragraph 18 of the Security Instrument shall instead read as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this

DOC ID #: 00016874870905007

Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Payment Advantage Fixed/Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____          -Borrower
BENEDITO J. ZALEWSKI

_____          -Borrower

_____          -Borrower

_____          -Borrower

• Payment Advantage Fixed/Adjustable Rate One Year LIBOR Rider
1E680-XX (12/06)                    Page 6 of 6

Exhibit A

A certain parcel of land situated on the westerly side of Pond Street in Ashland, Middlesex County, Massachusetts, containing 30,919 square feet, more or less, as shown on the plan entitled, "plan of Land in Ashland, Mass., Property of Henry Borelli", dated October 24, 1977, by William F. Drake & Associates, which plan is recorded with Middlesex South Registry of Deeds at Book 13400, page 70, and according to which, said parcel is bounded and described as follows:

SOUTHEASTERLY  by the westerly line of Pond Street on said plan, eighty-none and 08/100 (89.08) feet;

SOUTHWESTERLY by land of Peter W. & Maureen R. Gavin, as shown on said plan, two hundred thirty-four and 04/100 (234.04) feet;

NORTHWESTERLY by land of Richard B. Shepardson, as shown on said plan, one hundred seventy-five (175) feet; and

NORTHEASTERLY by a parcel containing 38,295 square feet, more or less, as shown on said plan, two hundred forty-eight and 70/100 (248.70) feet.

For title reference see deed dated March 30, 2004 and recorded in the Middlesex South District Registry of Deeds in Book 42368, Page 288.

Being the same premises conveyed to the herein named mortgagor (s) by deed recorded with Middlesex South District Registry of Deeds in Book 42368, Page 288.

Atest. Middlesex S. Register

# EXHIBIT C

Prepared by: JOANNE WARD

LOAN #: 168748709

# PAYMENT ADVANTAGE
# FIXED/ADJUSTABLE RATE NOTE
### (LIBOR One Year Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. FOR A LIMITED TIME I WILL HAVE A PAYMENT OPTION THAT IS LESS THAN THE FULL AMOUNT OF INTEREST DUE. IF I CHOOSE THIS OPTION, THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED.**
THIS NOTE CONTAINS A PREPAYMENT PENALTY.

MAY 31, 2007                                                             MASSACHUSETTS
[Date]                              [City]                                   [State]

255 POND STREET, ASHLAND, MA 01721-2017
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 348,000.00          ("Principal"), plus interest, to the order of Lender. The Principal may increase as provided under the terms of this Note but will not exceed          115   percent of the Principal amount I originally borrowed. This is called the "Maximum Negative Amortization Cap." If I default under this Note or the Security Instrument, then default charges may cause the Maximum Negative Amortization Cap to be exceeded. Lender is Countrywide Bank, FSB.
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or its successors or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

### (A)   Fixed Interest Rate

Interest will be charged on unpaid Principal until the full amount has been paid. Interest will initially accrue at a yearly rate of 8.000 %. This is my initial fixed interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

### (B)   Adjustable Interest Rate

The initial fixed interest rate I owe will change to an adjustable interest rate on the first          day of JUNE, 2012          and the adjustable interest rate will change on that day every 12ᵗʰ month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C)   Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index."

• Payment Advantage Fixed/Adjustable Rate Note 3/1, 5/1, 7/1, 10/1 One Year LIBOR
1E682-XX (12/06)(d/i)                              Page 1 of 5



* 23991 *

* 16874870900000 1 E 682 *

LOAN #: 168748709

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Adjustable Interest Rate Changes**
Before each Interest Rate Change Date, the Note Holder will calculate my new adjustable interest rate by adding 2.250 % (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new adjustable interest rate until the next Interest Rate Change Date. My adjustable interest rate will never be greater than 13.000 % or lower than the Margin.

**(E)  Limits on Interest Rate Changes**
The interest rate in effect at the first Interest Rate Change Date will not be greater than 13.000 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 2 percentage points from the rate of interest in effect for the preceding 12 months.

**3.    PAYMENTS**
**(A)  Time and Place of Payments**
I will make a payment every month.
I will make my monthly payments on the first day of each month beginning on JULY 01, 2007 . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If I still owe amounts under this Note on JUNE 01, 2037 , I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

**(B)  Minimum Payment**
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. The Minimum Payment is calculated three (3) different ways during the loan term:
        (i)   Until JUNE 01, 2017 ("Recast Date") or until the Maximum Negative Amortization Cap is reached, whichever is earlier, the Minimum Payment will be calculated using the then-current interest rate (either fixed or adjustable as described in Section 2) minus 5.000 percentage points. The result of this calculation is called the "Minimum Payment Rate." The Minimum Payment Rate can never be lower than 1%. Since the Minimum Payment Rate is less than the interest rate applied to my unpaid Principal balance, the Minimum Payment will be insufficient to pay the interest portion of the monthly payment and no portion is applied to Principal. When I make a Minimum Payment, which is based on the Minimum Payment Rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."
        (ii)  If the unpaid Principal balance reaches the Maximum Negative Amortization Cap prior to the Recast Date, my new Minimum Payment will be the amount that would pay only the interest portion of the monthly payment based upon the then-current interest rate, which changes in accordance with Section 2. This is the Minimum Payment in effect until the Recast Date.
        (iii) After the Recast Date and for the remainder of the loan term, the Minimum Payment will be the monthly payment amount necessary to pay the loan off, in full, at the Maturity Date in substantially equal payments based on the then-current interest rate, which changes in accordance with Section 2.

**(C)  Initial Monthly Minimum Payment**
Each of my initial monthly Minimum Payments until the first Interest Rate Change Date will be in the amount of U.S. $1,467.18 .

**(D)  Monthly Payment Changes**
Changes in my monthly payment will be the result of changes in the unpaid Principal balance of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 2 and 3 of this Note.

LOAN #: 168748709

(E)  Additions to My Unpaid Principal

For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

(F)  Payment Options

Until the Recast Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") if they are greater than the Minimum Payment. The Payment Options are calculated using the interest rate in accordance with Section 2. The following Payment Options may be provided:

(i)  Interest Only Payment: the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)  Amortized Payment: the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii)  15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are greater than the Minimum Payment. If the Maximum Negative Amortization Cap is reached, then the Payment Options available will be the Amortized Payment and the 15 Year Amortized Payment. Upon the Recast Date I will no longer have Payment Options and I will be required to pay the Amortized Payment, which becomes the Minimum Payment as described in Section 3(B)(iii).

## 4.  NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction that could result from my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      3.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

LOAN #: 168748709

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees. If I default under this Note or the Security Instrument then default charges may cause the Maximum Negative Amortization Cap to be exceeded.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   DOCUMENT CORRECTION**

In the event that Note Holder at any time discovers that this Note, Security Instrument, Addenda, Rider or any other document related to this loan is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan, or otherwise contains an error, such as a clerical mistake, calculation error, computer error, printing error, electronic transmission error, or similar error, I agree, upon notice from Note Holder, to re-execute any documents that are necessary to replace or correct any such documents and return them within ten (10) days of receipt. I also agree that I will not hold Lender responsible for any damages which result from any such error.

**12.   SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests

LOAN #: 168748709

transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Paragraph 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____
BENEDITO J. ZALEWSKI                                              - Borrower


_____
                                                                          - Borrower


_____
                                                                          - Borrower


_____
                                                                          - Borrower

# EXHIBIT D



Return To:

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
JOANNE WARD

2007 00102949

Bk: 49560 Pg: 100  Doc: MTG
Page: 1 of 9   06/05/2007 11:22 AM

—————————————[Space Above This Line For Recording Data]—————————————

00016874870105007

[Doc ID #]

## MORTGAGE

MIN 1001337-0002234988-3

THIS MORTGAGE is made this 31st          day of MAY, 2007          , between the Mortgagor,
BENEDITO J ZALEWSKI

(herein "Borrower"), and the Mortgagee, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for
Lender, as hereinafter defined, and Lender's successors and assigns).  MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
Countrywide Bank, FSB.
A FED SVGS BANK                                                              , ("Lender") is organized
and existing under the laws of  THE UNITED STATES          , and has an address of
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
    WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ 43,500.00          , which
indebtedness is evidenced by Borrower's note dated  MAY 31, 2007          and extensions and renewals thereof
(herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not
sooner paid, due and payable on   JUNE 01, 2022          ;

**MASSACHUSETTS** - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

VMP® -76N(MA) (0401).02     CHL (05/06)(d)

Page 1 of 7
VMP Mortgage Solutions, Inc.

Form 3822
Amended 2/01



* 23991 *



* 1 6 8 7 4 8 7 0 1 0 0 0 0 0 1 0 7 8 N *

255  Pond St Ashland

DOC ID #: 00016874870105007

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of
MIDDLESEX                                    , State of Massachusetts:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which has the address of
                        255 POND STREET, ASHLAND                              , Massachusetts
                              [Street, City]
01721-2017 (herein "Property Address");
     [Zip Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

VMP -76N(MA) (0401).02      CHL (05/06)                    Page 2 of 7                              Form 3822

DOC ID #: 0001687487010500 7

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

VMP®  -76N(MA) (0401).02      CHL (05/06)          Page 3 of 7                          Form 3822

DOC ID #: 0001687487010500 7

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

DOC ID #: 00016874870105007

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.**

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

DOC ID #: 0001687487010500007

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without cost to Borrower. Borrower shall pay all costs of recordation, if any.

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage under Seal.

_____
BENEDITO J. ZALEWSKI                          -Borrower

_____
                                              -Borrower

_____
                                              -Borrower

_____
                                              -Borrower

*(Sign Original Only)*

The Note secured by the Mortgage has:
a Principal Sum of $ 43,500.00          a Period of Loan of  360  Months
a Rate of Interest of          11.375 % Periodic Due Dates of  The 1st Day of Each Month

**COMMONWEALTH OF MASSACHUSETTS,**

DOC ID #: 00016874870105007
County ss: _Worcester_

On this _31_ day of _May, 2007_____, before me, the undersigned notary public, personally appeared _____

_____ _Benedito J. Zalewski._ _____

_____

_____

proved to me through satisfactory evidence of identification, which was/were _MA R MV_____, to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires: 11/01/07

(Seal)

_Gina M. Braza_
Notary Public

GINA M. BRAZA
MY COMM. EXPIRES
NOV. 1, 2007
COMMONWEALTH OF MASSACHUSETTS
NOTARY PUBLIC

Bk. 49586 Pg. 107

Prepared by: JOANNE WARD

**Countrywide Bank, FSB.**

DATE:            05/31/2007
CASE #:
DOC ID #:      00016874870105007
BORROWER: BENEDITO J. ZALEWSKI
PROPERTY ADDRESS: 255 POND STREET
                 ASHLAND, MA 01721-2017

Branch #: 0000988
99 ROSEWOOD DRIVE, SUITE 225
DANVERS, MA 01923
Phone: (978)762-3100
Br Fax No.: (978)762-3809

### LEGAL DESCRIPTION EXHIBIT A



FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)

*23991*

*1687487010000001076N*

**Bk: 49560 Pg: 108**

Exhibit A

A certain parcel of land situated on the westerly side of Pond Street in Ashland, Middlesex County, Massachusetts, containing 30,919 square feet, more or less, as shown on the plan entitled, "plan of Land in Ashland, Mass., Property of Henry Borelli", dated October 24, 1977, by William F. Drake & Associates, which plan is recorded with Middlesex South Registry of Deeds at Book 13400, page 70, and according to which, said parcel is bounded and described as follows:

SOUTHEASTERLY  by the westerly line of Pond Street on said plan, eighty-none and 08/100 (89.08) feet;

SOUTHWESTERLY by land of Peter W. & Maureen R. Gavin, as shown on said plan, two hundred thirty-four and 04/100 (234.04) feet;

NORTHWESTERLY by land of Richard B. Shepardson, as shown on said plan, one hundred seventy-five (175) feet; and

NORTHEASTERLY by a parcel containing 38,295 square feet, more or less, as shown on said plan, two hundred forty-eight and 70/100 (248.70) feet.

For title reference see deed dated March 30, 2004 and recorded in the Middlesex South District Registry of Deeds in Book 42368, Page 288.

Being the same premises conveyed to the herein named mortgagor (s) by deed recorded with Middlesex South District Registry of Deeds in Book 42368, Page 288.

Attest Middlesex S. Register

# EXHIBIT E

Form **1040**  Department of the Treasury    Internal Revenue Service
**U.S. Individual Income Tax Return** **2006**  (99)  IRS Use Only — Do not write or staple in this space

For the year Jan 1 - Dec 31, 2006, or other tax year beginning _____ , 2006, ending _____ , 20 _____   OMB No. 1545-0074

| Label (See instructions.) | Your first name | MI | Last name | Your social security number |
|---|---|---|---|---|
| | Benedito | J | Zalewski | |

Use the IRS label. Otherwise, please print or type.

| If a joint return, spouse's first name | MI | Last name | Spouse's social security number |
|---|---|---|---|
| Maria | B | Zalewski | |

Home address (number and street). If you have a P.O. box, see instructions.    Apartment no.
255 Pond St

You must enter your social security number(s) above. ▲

City, town or post office. If you have a foreign address, see instructions.    State  ZIP code
Ashland    MA  01721

Checking a box below will not change your tax or refund.

**Presidential Election Campaign** ► Check here if you, or your spouse if filing jointly, want $3 to go to this fund? (see instructions) ........... ► ☐ You ☐ Spouse

**Filing Status**

Check only one box.

1 ☐ Single
2 ☒ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above & full name here ►
4 ☐ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here ►
5 ☐ Qualifying widow(er) with dependent child (see instructions)

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, do not check box 6a ...........
b ☒ Spouse ................................................................................

Boxes checked on 6a and 6b  **2**

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see instrs) |
|---|---|---|---|
| Thiago E Zalewski | | Son | ☒ |
| | | | |
| | | | |
| | | | |

No. of children on 6c who:
• lived with you ...... **1**
• did not live with you due to divorce or separation (see instrs) ...
Dependents on 6c not entered above ...
Add numbers on lines above ... **3**

If more than four dependents, see instructions.

d Total number of exemptions claimed .......................................................

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | |
|---|---|---|
| 7 Wages, salaries, tips, etc. Attach Form(s) W-2 ................................ | 7 | |
| 8a Taxable interest. Attach Schedule B if required ................................ | 8a | |
| b Tax-exempt interest. Do not include on line 8a ....... 8b | | |
| 9a Ordinary dividends. Attach Schedule B if required ............................. | 9a | |
| b Qualified dividends (see instrs) ....... 9b | | |
| 10 Taxable refunds, credits, or offsets of state and local income taxes (see instructions) ... | 10 | |
| 11 Alimony received .................................................................... | 11 | |
| 12 Business income or (loss). Attach Schedule C or C-EZ ......................... | 12 | 37,390. |
| 13 Capital gain or (loss). Att Sch D if reqd. If not reqd, ck here ......... ► ☐ | 13 | |
| 14 Other gains or (losses). Attach Form 4797 .................................... | 14 | |
| 15a IRA distributions ......... 15a | b Taxable amount (see instrs) .. | 15b | |
| 16a Pensions and annuities .... 16a | b Taxable amount (see instrs) .. | 16b | |
| 17 Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E ... | 17 | |
| 18 Farm income or (loss). Attach Schedule F .................................... | 18 | |
| 19 Unemployment compensation ................................................... | 19 | |
| 20a Social security benefits ....... 20a | b Taxable amount (see instrs) .. | 20b | |
| 21 Other income ...................................................................... | 21 | |
| 22 Add the amounts in the far right column for lines 7 through 21. This is your total income ► | 22 | 37,390. |

**Adjusted Gross Income**

| | | |
|---|---|---|
| 23 Archer MSA deduction. Attach Form 8853 ............. | 23 | |
| 24 Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ ..... | 24 | |
| 25 Health savings account deduction. Attach Form 8889 ..... | 25 | |
| 26 Moving expenses. Attach Form 3903 ................. | 26 | |
| 27 One-half of self-employment tax. Attach Schedule SE ..... | 27 | 2,642. |
| 28 Self-employed SEP, SIMPLE, and qualified plans ..... | 28 | |
| 29 Self-employed health insurance deduction (see instructions) ... | 29 | |
| 30 Penalty on early withdrawal of savings ............... | 30 | |
| 31a Alimony paid  b Recipient's SSN .... ► | 31a | |
| 32 IRA deduction (see instructions) ..................... | 32 | |
| 33 Student loan interest deduction (see instructions) ..... | 33 | |
| 34 Jury duty pay you gave to your employer ............. | 34 | |
| 35 Domestic production activities deduction. Attach Form 8903 ... | 35 | |
| 36 Add lines 23 - 31a and 32 - 35 ...................................................... | 36 | 2,642. |
| 37 Subtract line 36 from line 22. This is your adjusted gross income ................... | 37 | 34,748. |

BAA For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see instructions.    FDIA0112  11/07/06    Form **1040** (2006)

| | | | | | |
|---|---|---|---|---|---|
| **Tax and Credits** | 38 | Amount from line 7 (adjusted gross income) | | 38 | 34,748. |
| | 39a | Check if: ☐ You were born before January 2, 1942, ☐ Blind. ☐ Spouse was born before January 2, 1942, ☐ Blind. } Total boxes checked ▶ 39a | | | |
| **Standard Deduction for —** | b | If your spouse itemizes on a separate return, or you were a dual-status alien, see instrs and ck here ▶ 39b ☐ | | | |
| • People who checked any box on line 39a or 39b or who can be claimed as a dependent, see instructions. | 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | | 40 | 31,484. |
| | 41 | Subtract line 40 from line 38 | | 41 | 3,264. |
| | 42 | If line 38 is over $112,875, or you provided housing to a person displaced by Hurricane Katrina, see instructions. Otherwise, multiply $3,300 by the total number of exemptions claimed on line 6d | | 42 | 9,900. |
| | 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | | 43 | 0. |
| • All others: | 44 | Tax (see instrs). Check if any tax is from: a ☐ Form(s) 8814 b ☐ Form 4972 | | 44 | 0. |
| Single or Married filing separately, $5,150 | 45 | Alternative minimum tax (see instructions). Attach Form 6251 | | 45 | |
| | 46 | Add lines 44 and 45 | | 46 | 0. |
| Married filing jointly or Qualifying widow(er), $10,300 | 47 | Foreign tax credit. Attach Form 1116 if required | 47 | | |
| | 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | | |
| | 49 | Credit for the elderly or the disabled. Attach Schedule R | 49 | | |
| Head of household, $7,550 | 50 | Education credits. Attach Form 8863 | 50 | | |
| | 51 | Retirement savings contributions credit. Attach Form 8880 | 51 | | |
| | 52 | Residential energy credits. Attach Form 5695 | 52 | | |
| | 53 | Child tax credit (see instructions). Attach Form 8901 if required | 53 | 0. | |
| | 54 | Credits from: a ☐ Form 8396 b ☐ Form 8839 c ☐ Form 8859 | 54 | | |
| | 55 | Other credits. Check applicable box(es): a ☐ Form 3800 b ☐ Form 8801 c ☐ Form | 55 | | |
| | 56 | Add lines 47 through 55. These are your total credits | | 56 | 0. |
| | 57 | Subtract line 56 from line 46. If line 56 is more than line 46, enter -0- | | 57 | 0. |
| **Other Taxes** | 58 | Self-employment tax. Attach Schedule SE | | 58 | 5,283. |
| | 59 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | | 59 | |
| | 60 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | 60 | |
| | 61 | Advance earned income credit payments from Form(s) W-2, box 9 | | 61 | |
| | 62 | Household employment taxes. Attach Schedule H | | 62 | |
| | 63 | Add lines 57-62. This is your total tax | ▶ | 63 | 5,283. |
| **Payments** | 64 | Federal income tax withheld from Forms W-2 and 1099 | 64 | | |
| If you have a qualifying child, attach Schedule EIC. | 65 | 2006 estimated tax payments and amount applied from 2005 return | 65 | | |
| | 66a | Earned income credit (EIC) ▶ No | 66a | | |
| | b | Nontaxable combat pay election ▶ 66b | | | |
| | 67 | Excess social security and tier 1 RRTA tax withheld (see instructions) | 67 | | |
| | 68 | Additional child tax credit. Attach Form 8812 | 68 | 1,000. | |
| | 69 | Amount paid with request for extension to file (see instructions) | 69 | | |
| | 70 | Payments from: a ☐ Form 2439 b ☐ Form 4136 c ☐ Form 8885 | 70 | | |
| | 71 | Credit for federal telephone excise tax paid. Attach Form 8913 if required | 71 | 50. | |
| | 72 | Add lines 64, 65, 66a, and 67 through 71. These are your total payments | ▶ | 72 | 1,050. |
| **Refund** | 73 | If line 72 is more than line 63, subtract line 63 from line 72. This is the amount you overpaid | | 73 | |
| Direct deposit? See instructions and fill in 74b, 74c, and 74d or Form 8888. | 74a | Amount of line 73 you want refunded to you. If Form 8888 is attached, check here ▶ ☐ | | 74a | |
| | b | Routing number | ▶ c Type: ☐ Checking ☐ Savings | | |
| | d | Account number | | | |
| | 75 | Amount of line 73 you want applied to your 2007 estimated tax ▶ 75 | | | |
| **Amount You Owe** | 76 | Amount you owe. Subtract line 72 from line 63. For details on how to pay, see instructions | ▶ | 76 | 4,413. |
| | 77 | Estimated tax penalty (see instructions) | 77 | 180. | |

| **Third Party Designee** | Do you want to allow another person to discuss this return with the IRS (see instructions)? ☒ Yes. Complete the following ☐ No |
|---|---|

Designee's name ▶ Preparer    Phone no. ▶    Personal identification number (PIN) ▶

**Sign Here**
Joint return?
See instructions.
Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature ▶    Date    Your occupation  Maintenance serv.    Daytime phone number

Spouse's signature. If a joint return, both must sign. ▶    Date    Spouse's occupation  At Home

| **Paid Preparer's Use Only** | Preparer's signature ▶ Rosciane Fisher | Date 08/09/2007 | Check if self-employed ☐ | Preparer's SSN or PTIN P00606286 |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code ▶ | INCOMETAX AND ACCOUNTING PLUS INC 100 CONCORD ST FRAMINGHAM    MA  01702 | | EIN 20-2115458 Phone no. (508) 872-5597 |

Form 1040 (2006)

**SCHEDULE A**
(Form 1040)

Department of the Treasury
Internal Revenue Service  (99)

**Itemized Deductions**

► Attach to Form 1040.
► See Instructions for Schedule A (Form 1040).

OMB No. 1545-0074

**2006**

Attachment
Sequence No.  07

Name(s) shown on Form 1040

Benedito J & Maria B Zalewski

Your social security number

| | | | | | |
|---|---|---|---|---|---|
| **Medical and Dental Expenses** | | Caution. Do not include expenses reimbursed or paid by others. | | | |
| | 1 | Medical and dental expenses (see instructions) | 1 | | |
| | 2 | Enter amount from Form 1040, line 38 .... | 2 | | |
| | 3 | Multiply line 2 by 7.5% (.075) | 3 | | |
| | 4 | Subtract line 3 from line 1. If line 3 is more than line 1, enter -0- | | 4 | |
| **Taxes You Paid** (See instructions.) | 5 | State and local income taxes | 5 | 1,174. | |
| | 6 | Real estate taxes (see instructions) | 6 | 4,200. | |
| | 7 | Personal property taxes | 7 | | |
| | 8 | Other taxes. List type and amount ► _ _ _ _ _ _ _ _ | 8 | | |
| | 9 | Add lines 5 through 8 | | 9 | 5,374. |
| **Interest You Paid** (See instructions.) **Note. Personal interest is not deductible.** | 10 | Home mtg interest and points reported to you on Form 1098 | 10 | 26,110. | |
| | 11 | Home mortgage interest not reported to you on Form 1098. If paid to the person from whom you bought the home, see instructions and show that person's name, identifying number, and address ► _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 11 | | |
| | 12 | Points not reported to you on Form 1098. See instrs for spcl rules | 12 | | |
| | 13 | Investment interest. Attach Form 4952 if required. (See instrs.) | 13 | | |
| | 14 | Add lines 10 through 13 | | 14 | 26,110. |
| **Gifts to Charity** If you made a gift and got a benefit for it, see instructions. | 15 | Gifts by cash or check. If you made any gift of $250 or more, see instrs | 15 | | |
| | 16 | Other than by cash or check. If any gift of $250 or more, see instructions. You must attach Form 8283 if over $500 | 16 | | |
| | 17 | Carryover from prior year | 17 | | |
| | 18 | Add lines 15 through 17 | | 18 | |
| **Casualty and Theft Losses** | 19 | Casualty or theft loss(es). Attach Form 4684. (See instructions.) | | 19 | |
| **Job Expenses and Certain Miscellaneous Deductions** (See instructions.) | 20 | Unreimbursed employee expenses — job travel, union dues, job education, etc. Attach Form 2106 or 2106-EZ if required. (See instructions.) ► _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 20 | | |
| | 21 | Tax preparation fees | 21 | | |
| | 22 | Other expenses — investment, safe deposit box, etc. List type and amount ► _ _ _ _ _ _ _ _ _ _ | 22 | | |
| | 23 | Add lines 20 through 22 | 23 | | |
| | 24 | Enter amount from Form 1040, line 38 ..... | 24 | | |
| | 25 | Multiply line 24 by 2% (.02) | 25 | | |
| | 26 | Subtract line 25 from line 23. If line 25 is more than line 23, enter -0- | | 26 | |
| **Other Miscellaneous Deductions** | 27 | Other — from list in the instructions. List type and amount ► _ _ _ _ _ _ _ _ _ | | 27 | |
| **Total Itemized Deductions** | 28 | Is Form 1040, line 38, over $150,500 (over $75,250 if married filing separately)? | | | |
| | | ☒ No.  Your deduction is not limited. Add the amounts in the far right column for lines 4 through 27. Also, enter this amount on Form 1040, line 40. | ► | 28 | 31,484. |
| | | ☐ Yes.  Your deduction may be limited. See instructions for the amount to enter. | | | |
| | 29 | If you elect to itemize deductions even though they are less than your standard deduction, check here ► ☐ | | | |

BAA  For Paperwork Reduction Act Notice, see Form 1040 instructions.

FDIA0301  11/07/06

Schedule A (Form 1040) 2006

| SCHEDULE C | Profit or Loss From Business | OMB No. 1545-0074 |
|---|---|---|
| (Form 1040) | (Sole Proprietorship) | **2006** |

Department of the Treasury
Internal Revenue Service   (99)    ► Partnerships, joint ventures, etc., must file Form 1065 or 1065-B.
► Attach to Form 1040, 1040NR, or 1041.  ► See Instructions for Schedule C (Form 1040).

Attachment
Sequence No.  09

Name of proprietor: **Benedito J Zalewski**

Social security number (SSN): ▓▓▓▓▓▓

A  Principal business or profession, including product or service (see instructions)

**Maintenance Service**

B  Enter code from instructions  ► 999999

C  Business name. If no separate business name, leave blank.

**DT Maintenance**

D  Employer ID number (EIN), if any  20-2798884

E  Business address (including suite or room no.) ► **255 Pond St**
City, town or post office, state, and ZIP code  **Ashland, MA 01721**

F  Accounting method: (1) [X] Cash  (2) [ ] Accrual  (3) [ ] Other (specify) ►

G  Did you 'materially participate' in the operation of this business during 2006? If 'No,' see instructions for limit on losses .... [X] Yes [ ] No

H  If you started or acquired this business during 2006, check here ......................... ► [ ]

## Part I  Income

| | | |
|---|---|---|
| 1  Gross receipts or sales. Caution. If this income was reported to you on Form W-2 and the 'Statutory employee' box on that form was checked, see the instructions and check here ............ ► [ ] | 1 | 48,600. |
| 2  Returns and allowances ............................................. | 2 | |
| 3  Subtract line 2 from line 1 .......................................... | 3 | 48,600. |
| 4  Cost of goods sold (from line 42 on page 2) ........................... | 4 | |
| 5  Gross profit. Subtract line 4 from line 3 ............................. | 5 | 48,600. |
| 6  Other income, including federal and state gasoline or fuel tax credit or refund .................. | 6 | |
| 7  Gross income. Add lines 5 and 6 ........................... ► | 7 | 48,600. |

## Part II  Expenses. Enter expenses for business use of your home only on line 30.

| | | | | | |
|---|---|---|---|---|---|
| 8  Advertising ............... | 8 | | 18  Office expense ...................... | 18 | |
| 9  Car and truck expenses (see instructions) ............ | 9 | 5,526. | 19  Pension and profit-sharing plans | 19 | |
| | | | 20  Rent or lease (see instructions): | | |
| 10  Commissions and fees ........ | 10 | | a Vehicles, machinery, and equipment ..... | 20a | |
| 11  Contract labor (see instructions) ............ | 11 | | b Other business property ................ | 20b | |
| | | | 21  Repairs and maintenance ............. | 21 | 1,533. |
| 12  Depletion .................... | 12 | | 22  Supplies (not included in Part III) ... | 22 | 1,976. |
| 13  Depreciation and section 179 expense deduction (not included in Part III) (see instructions) ............ | 13 | | 23  Taxes and licenses .................. | 23 | |
| | | | 24  Travel, meals, and entertainment: | | |
| | | | a Travel ............................ | 24a | |
| 14  Employee benefit programs (other than on line 19) .... | 14 | | b Deductible meals and entertainment ...... | 24b | |
| 15  Insurance (other than health) ... | 15 | 600. | 25  Utilities ........................... | 25 | |
| 16  Interest: | | | 26  Wages (less employment credits) ...... | 26 | |
| a Mortgage (paid to banks, etc) ........ | 16a | | 27  Other expenses (from line 48 on page 2) ...... | 27 | 1,575. |
| b Other ........................ | 16b | | | | |
| 17  Legal & professional services ... | 17 | | | | |

| | | |
|---|---|---|
| 28  Total expenses before expenses for business use of home. Add lines 8 through 27 in columns ............ ► | 28 | 11,210. |
| 29  Tentative profit (loss). Subtract line 28 from line 7 .................................. | 29 | 37,390. |
| 30  Expenses for business use of your home. Attach Form 8829 ............................... | 30 | |
| 31  Net profit or (loss). Subtract line 30 from line 29. | | |
| • If a profit, enter on both Form 1040, line 12, and Schedule SE, line 2 or on Form 1040NR, line 13 (statutory employees, see instructions). Estates and trusts, enter on Form 1041, line 3. | 31 | 37,390. |
| • If a loss, you must go to line 32. | | |

32  If you have a loss, check the box that describes your investment in this activity (see instructions).

• If you checked 32a, enter the loss on both Form 1040, line 12, and Schedule SE, line 2, or on Form 1040NR, line 13 (statutory employees, see instructions). Estates and trusts, enter on Form 1041, line 3.

32a [ ] All investment is at risk.

• If you checked 32b, you must attach Form 6198. Your loss may be limited.

32b [ ] Some investment is not at risk.

BAA  For Paperwork Reduction Act Notice, see Form 1040 instructions.    Schedule C (Form 1040) 2006

FDIZ0112  11/03/06

Form **8812**

**Additional Child Tax Credit**

OMB No. 1545-0074

**2006**

Department of the Treasury
Internal Revenue Service   (99)

*Complete and attach to Form 1040, Form 1040A, or Form 1040NR.*

Attachment
Sequence No. **47**

Name(s) shown on return

Benedito J & Maria B Zalewski

Your social security number

| Part I | All Filers |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Enter the amount from line 1 of your Child Tax Credit Worksheet in the Form 1040, Form 1040A or Form 1040NR instructions. If you used Publication 972, enter the amount from line 8 of the worksheet on page 4 of the publication | **1** | 1,000. |
| 2 | Enter the amount from Form 1040, line 53, Form 1040A, line 33, or Form 1040NR, line 48 | **2** | 0. |
| 3 | Subtract line 2 from line 1. If zero, stop; you cannot take this credit | **3** | 1,000. |

| | | | |
|---|---|---|---|
| 4a | Enter your total earned income (see instructions) | **4a** | 34,748. |
| b | Nontaxable combat pay (see instructions) | **4b** | |

5  Is the amount on line 4a more than $11,300?

☐ **No.** Leave line 5 blank and enter -0- on line 6.

☒ **Yes.** Subtract $11,300 from the amount on line 4a. Enter the result ..... **5**   23,448.

| | | | |
|---|---|---|---|
| 6 | Multiply the amount on line 5 by 15% (.15) and enter the result | **6** | 3,517. |

**Next.** Do you have three or more qualifying children?

☒ **No.**  If line 6 is zero, stop; you cannot take this credit. Otherwise, skip Part II and enter the smaller of line 3 or line 6 on line 13.

☐ **Yes.**  If line 6 is equal to or more than line 3, skip Part II and enter the amount from line 3 on line 13. Otherwise, go to line 7.

| Part II | Certain Filers Who Have Three or More Qualifying Children |
|---|---|

| | | | |
|---|---|---|---|
| 7 | Withheld social security and Medicare taxes from Form(s) W-2, boxes 4 and 6. If married filing jointly, include your spouse's amounts with yours. If you worked for a railroad, see the instructions | **7** | |
| 8 | 1040 filers:  Enter the total of the amounts from Form 1040, lines 27 and 59, plus any uncollected social security and Medicare or tier 1 RRTA taxes included on line 63. | **8** | |
| | 1040A filers:  Enter -0-. | | |
| | 1040NR filers: Enter the total of the amounts from Form 1040NR, line 54, plus any uncollected social security and Medicare or tier 1 RRTA taxes included on line 58. | | |
| 9 | Add lines 7 and 8 | **9** | |
| 10 | 1040 filers:  Enter the total of the amounts from Form 1040, lines 66a and 67. | **10** | |
| | 1040A filers:  Enter the total of the amounts from Form 1040A, line 40a, plus any excess social security and tier 1 RRTA taxes withheld that you entered to the left of line 43 (see instructions). | | |
| | 1040NR filers: Enter the amount from Form 1040NR, line 61. | | |
| 11 | Subtract line 10 from line 9. If zero or less, enter -0- | **11** | |
| 12 | Enter the larger of line 6 or line 11 | **12** | |

**Next,** enter the smaller of line 3 or line 12 on line 13.

| Part III | Additional Child Tax Credit |
|---|---|

| | | | |
|---|---|---|---|
| 13 | This is your additional child tax credit | **13** | 1,000. |

*Enter this amount on
Form 1040, line 68, or
Form 1040A, line 41, or
Form 1040NR, line 52*

FDIA3001  10/23/06

Form **8812** (2006)

# EXHIBIT F





2010 00064923
Bk: 54586 Pg: 243    Doc: ASM
Page: 1 of 2    04/26/2010 11:45 AM

## CORPORATE ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED
"MERS", Mortgage Electronic Registration Systems, Inc., a separate corporation that is acting
solely as nominee for Countrywide Bank, FSB, "Lender"; its successors and assigns

HEREBY GRANTS, ASSIGNS AND TRANSFERS TO:
HSBC Bank USA, N.A., as Trustee of the Deutsche ALT-A Mortgage Loan Trust, Series 2007-OA3
Mortgage Pass-Through Certificates
c/o BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP
7105 Corporate Drive
Plano, TX 75024

ALL OF ITS RIGHT TITLE AND INTEREST UNDER THAT CERTAIN MORTGAGE TO "MERS",
Mortgage Electronic Registration Systems, Inc., a separate corporation that is acting solely as
nominee for Countrywide Bank, FSB, "Lender"; its successors and assigns dated May 31, 2007

EXECUTED BY Benedito J. Zalewski

RECORDED IN BOOK 49560, PAGE 82 OF OFFICIAL RECORDS IN THE REGISTRY OF DEEDS
OF MIDDLESEX COUNTY (SOUTHERN DISTRICT), IN THE STATE OF MASSACHUSETTS.

Property Address:  255 Pond Street, Ashland, Massachusetts

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE/MORTGAGE. THIS
ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTIES.

This Assignment shall be effective as of May 22, 2008.

DATED: 1/27/10

Guaietta + Benson
PO Box 519
Chelmsford, Ma 01824

"MERS", Mortgage Electronic Registration Systems, Inc., a separate corporation that is acting solely as nominee for Countrywide Bank, FSB, "Lender"; its successors and assigns

BY: _____

Name:
Title:   Sandra Williams-Assist. Vice President

## STATE OF TEXAS

Collin, ss.

ON  [JAN 2 7 2010]  BEFORE ME, THE UNDERSIGNED NOTARY PUBLIC PERSONALLY APPEARED    Sandra Williams                PERSONALLY KNOWN TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE WHICH WAS _____) TO BE THE PERSON(S) WHOSE NAME(S) IS/ARE SUBSCRIBED IN THE WITHIN INSTRUMENT AND ACKNOWLEDGED TO ME THAT HE/SHE/THEY EXECUTED THE SAME IN HIS/HER/THEIR AUTHORIZED CAPACITY(IES), AND THAT BY HIS/HER/THEIR SIGATURE(S) ON THE INSTRUMENT THE PERSON(S), OR THE ENTITY UPON BEHALF OF WHICH THE PERSON(S) ACTED, EXECUTED THE INSTRUMENT AND SWORE THAT IT WAS THEIR FREE ACT AND DEED.

WITNESS MY HAND AND OFFICIAL SEAL:

NOTARY SIGNATURE: _____
MY COMMISSION EXPIRES: _____

SOPHIA L. CUMMINGS
Notary Public
STATE OF TEXAS
My Comm. Exp. 05-11-11

Mortgage Information:
Seagate Financial Services, Inc.
121A concord Street
Framingham, MA  01702
Lic. No.: NMLS6686